# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARILYN F. MOLERO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2350-WBV-MBN** |
| **ROSS DRESS FOR LESS, INC., ET AL.** | **SECTION: D (5)** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment.[1]  The Motion is opposed,[2] and Defendants have filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an injury sustained at a department store.  On June 3, 2020, Marilyn F. Molero filed a Petition for Damages in the Civil District Court for the Parish of Orleans against Ross Dress For Less, Inc. and Ross Stores, Inc. (collectively "Defendants").[4]  Molero claims she was shopping at a Ross Dress For Less, Inc. store in New Orleans, Louisiana on July 31, 2019 when she walked into "an unnoticeable, empty J hook."[5]  Molero claims she jammed her left pointer finger and hand on the merchandise hook, which resulted in a left hand injury that has required

---

[1] R. Doc. 13.
[2] R. Doc. 24.
[3] R. Doc. 28.
[4] R. Doc. 1-5.
[5] *Id.* at ¶ 3.

continuing treatment.[6]  Molero's allegations against Defendants sound in premises liability.[7]  On August 25, 2020, Defendants timely filed a Notice of Removal, asserting that this Court has diversity jurisdiction over Molero's claims pursuant to 28 U.S.C. § 1332.[8]

On December 11, 2020, Defendants filed this instant Motion for Summary Judgment, asserting that Molero cannot show sufficient support for an essential element of her case – the presence of an unreasonably dangerous condition at the store.[9]  Defendants claim that under Louisiana Civil Code article 2317.1, an essential element for a premises liability claim is the presence of an unreasonably dangerous condition.[10]  Defendants argue that summary judgment is warranted in this case because Molero has not raised a genuine issue of material fact as to whether the "J hook," or merchandise hook, presented an unreasonable risk of harm.[11]  While Plaintiff has photographs of the merchandise hooks in question and Defendants concede that the J hooks are chrome and protrude into aisles, Defendants claim such characteristics are typical of these hooks.[12]  To the extent their color and arrangement causes some risk or danger (which Defendants deny), Defendants argue such risk or danger does not equate to an unreasonably dangerous condition under La. Civ. Code art. 2317.1.[13]  Because Defendants have carried their burden of proving the absence

---

[6] *Id*. at ¶ 6.
[7] *Id*. at ¶ 7.
[8] R. Doc. 1 at ¶¶ VII-VIII.
[9] R. Doc. 13; R. Doc. 13-1 at p. 1.
[10] R. Doc. 13-1 at p. 2.
[11] *Id*. at pp. 2-3.
[12] *Id*. at p. 3.
[13] *Id*.

of support for an essential element of Molero's claim, Defendants assert that the summary judgment burden shifts to Molero to provide sufficient evidence to create a genuine issue for trial.[14]  If Molero fails to carry that burden, Defendants assert summary judgment must be granted.

Molero opposes the Motion and disputes Defendants' argument that the merchandise hooks did not present an unreasonably dangerous condition.[15]  Molero argues she has provided ample evidence to raise contested issues of fact regarding the hook's hazardous condition, including her own deposition testimony, the deposition testimony of Treashelle Woods, a store employee who wrote the incident report, and the deposition testimony of Liza Tucker, a security guard who witnessed the incident.[16]  Molero points out that Woods and Tucker both testified that the hooks were difficult to see, or even "invisible," when merchandise was not hanging from them, and that Molero was the second person to injure herself on the hooks that day.[17] Molero further asserts that the display hook is not an "open and obvious" condition due to the low visibility of the hooks without merchandise.[18]  Molero points out that the deposition testimony shows that she was the second person injured by the empty J hooks on the date of the incident, so Defendants had notice of the unreasonably

---

[14] *Id*. at pp. 3-4.
[15] R. Doc. 24.
[16] *Id*. at pp. 1-4.
[17] *Id*. at pp. 1-4, 9.  The Court notes that Liza Tucker did not testify during her deposition that another person was injured on the hooks.  Instead, she testified that "another person hit the rack, you know, ran into it.  But they didn't hurt they self so they didn't you, know, file any complaints or anything, but they hit the rack, too."  (R. Doc. 24-3 at p. 7).  Treashelle Woods testified during her deposition that she did not see anyone get injured by the hooks, but was only reporting what Ms. Tucker had advised her. (R. Doc. 24-2, pp. 10-11).
[18] *Id*. at p. 8.

dangerous condition and took no action to correct or alleviate the dangerous condition until after Molero's injury.[19]   As such, Molero contends that she has presented sufficient evidence to demonstrate that there are contested issues of fact regarding whether the J hook, without merchandise, presented an unreasonably dangerous condition.[20]

In their Reply brief, Defendants largely reiterate the arguments made in their Motion and maintain that Molero has failed to provide evidence to show that the merchandise hook was unreasonably dangerous.[21]   Defendants also raise hearsay objections to specific elements of Molero's testimony, to statements in the incident report made by people other than Woods, and to certain testimony from Tucker.[22] Defendants assert that providing evidence that the merchandise hook was finished in chrome, that it only had some merchandise on it at the time of the incident, that Molero injured herself by walking into it, and that someone else previously walked into the rack does not show that the merchandise hook was unreasonably dangerous.[23]  Defendants emphasize that the issue before the Court is whether the summary judgment evidence is enough to cause reasonable minds to disagree regarding whether the merchandise hook would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. [24]

---

[19] *Id*. at p. 9. *See also* fn 17.
[20] *Id*. at p. 7.
[21] R. Doc. 28.
[22] *Id*. at p. 1, n.1.
[23] *Id*. at pp. 1-2.
[24] *Id*. at pp. 2, 3.

Defendants contend that if the Court answers in the negative, summary judgment must be granted.

## II.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact and the moving party is entitled to judgment as a matter of law.[25] A party moving for summary judgment under Fed. R. Civ. P. 56 must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[26]

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[27]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[28]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[29]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most

---

[25] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).
[26] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
[28] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[29] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[30]

## III.   ANALYSIS

In a diversity case such as this one, state substantive law applies.[31]  The sole dispute between the parties in this case is whether there is a genuine issue of material fact regarding whether the merchandise hook that caused Molero's injury was unreasonably dangerous under Louisiana Civil Code article 2317.1.   Article 2317.1 provides that:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.[32]

The merchant liability statute likewise provides that in a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant has the burden of proving that the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.[33]  In Louisiana, "merchants are required to exercise reasonable care to protect those who

---

[30] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[31] *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 L.Ed. 1188 (1938)).
[32] La. Civ. Code art. 2317.1.
[33] La. R.S. 9:2800.6(B).  Molero acknowledges that if Article 2317.1 is not applicable, La. R.S. 9:2800.6 requires a plaintiff to prove the existence of an unreasonably dangerous condition.  (R. Doc. 24 at p. 6).

enter the store, and this duty extends to keeping the premises safe from unreasonable risks of harm and warning persons of known dangers."[34]  Merchants, however, are not insurers of their patrons' safety, and a customer is under a duty to use ordinary care to avoid injury.[35]  Thus, a merchant is not liable every time an accident happens.[36]

An unreasonable risk of harm is present if the dangerous condition would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.[37]  Louisiana courts apply a risk-utility balancing test to determine whether a condition presents an unreasonable risk of harm.[38]  This test considers four factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature.[39]  With respect to the second prong of the risk-utility inquiry, a merchant generally does not have a duty to protect against an open and obvious hazard.[40]  According to the Louisiana Supreme Court, a

---

[34] *Pena v. Delchamps, Inc*., 2006-0364 (La. App. 1 Cir. 3/28/07), 960 So. 2d 988, 991 (citation omitted).

[35] *Id*. (citation omitted).

[36] *Id*. (citation omitted).

[37] *Willig v. Pinnacle Entm't. Inc*., 2015-1998 (La. App. 1 Cir. 9/16/16), 202 So. 3d 1169, 1173 (citing *Lasyone v. Kansas City So. Railroad,* 2000-2628 (La. 4/3/01), 786 So. 2d 682, 690).

[38] *Broussard v. State ex rel. Office of State Bldgs*., 2012-1238 (La. 4/5/13), 113 So. 3d 175, 184 (citations omitted).

[39] *Id.*

[40] *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14), 171 So. 3d 851, 856; *Romain v. Brooks Restaurants, Inc.*, 2020-0243 (La. App. 4 Cir. 11/18/20), 2020 WL 6776790, at *2 (citing *Sepulvado v. Traveler's Ins.*, 52,415, p.5 (La. App. 2 Cir. 11/8/18), 261 So.3d 980, 983).

hazard is considered obvious and apparent if it is "open and obvious to everyone who may potentially encounter it."[41]

The parties largely agree on the substantive law, including the application of the risk-utility balancing test to determine whether a condition presents an unreasonable risk of harm. The parties, however, disagree on the outcome of that balancing test regarding the facts of this case. Defendants argue there is an absence of factual support to prove that the merchandise hooks at issue presented an unreasonable risk of harm. Although Defendants admit the hooks are chrome and protrude into the aisles of the department store, they argue that, to the extent those characteristics may present a risk or danger, that risk or danger does not rise to the level of an *unreasonable* risk of harm. Applying the risk-utility balancing test, the Court agrees.

With respect to the first prong of the balancing test, the Court finds that the merchandise hooks in the Ross Dress for Less, Inc. store serve a valuable function of displaying clothing that customers could easily observe and inspect. Although the hooks did not have merchandise hanging from them at the time of the incident, their utility is not lost simply because they were not being utilized at the time of the incident. An analysis of the first prong is also tied to an analysis of the third prong, inasmuch as the hooks do not lose their utility each time a customer removes merchandise from the hook.

---

[41] *Bufkin*, 2014-0288, 171 So. 3d at 856 (citations omitted).

Turning to the second prong of the risk-utility balancing test, the Court finds the likelihood and magnitude of harm that could be caused by the merchandise hooks is slim given their conspicuousness to shoppers walking through the aisles of the store. The Court has reviewed the photographs submitted with Defendants' Motion,[42] and agrees with Defendants that the merchandise hooks were open and obvious to all. Molero contends the merchandise hooks cannot be considered an "open and obvious" condition due to their low visibility when there is no merchandise hanging from them. The Court is not persuaded by this argument, and finds the cases cited by Molero are factually distinguishable because they concern the hazard posed by empty display pallets located on the floor of various establishments.[43] In each of those cases, the court in question focused on the location of the pallets in store aisles and the likelihood that an individual would trip and fall even after exercising ordinary care. For example, in *Moore*, the court found the plaintiff raised questions of fact regarding the condition of the pallet, such as whether it was placed unreasonably close to an exit door, the protrusion of one of the corners into an aisle, and the fact that the exit was partially obscured from the inside of the store by merchandise placed in front of a window.[44] Similarly, the court in *Hutchinson* found an empty pallet left unattended in the aisle of a Wal-Mart created an unreasonably dangerous situation based on expert testimony indicating that it posed a serious risk

---

[42] R. Doc. 13-4.

[43] *See*, R. Doc. 24 at p. 8 (citing *Moore v. Murphy Oil USA, Inc.*, 2015-0096 (La. App. 1 Cir. 12/23/15), 186 So. 3d 135, 147; *Hutchinson v. Wal-Mart, Inc.*, 573 So. 2d 1148 (La. Ct. App. 4 Cir. 1990); *Darton v. Kroger Co.*, 30,771 (La. App. 2 Cir. 8/25/98), 716 So. 2d 974, 975).

[44] *Moore,* 186 So. 3d at 149.

9

that a customer may trip over it and the fact that Wal-Mart's own safety procedures regarding stack bases were not followed at the time of the incident.[45]

Unlike the facts in those cases, the merchandise hooks at issue in this case were located above waist-level and closer to eye-level.  Although Molero, Treashelle Woods, and Liza Tucker all testified that the merchandise hooks were hard to see without merchandise hanging from them, the Court finds that an individual exercising ordinary care would be vigilant of these types of hooks at a department store because they are customarily used to display clothing.  Additionally, the Court has reviewed the photographs of the merchandise hooks and finds that a customer exercising ordinary care would have noticed the empty merchandise hooks because they are located within eye-level of a passing customer and are not so difficult to see to render them virtually invisible, as Molero claims.  As such, the Court finds that the merchandise hooks were open and obvious to all shoppers.  The Court further finds that Molero has failed to provide the Court with evidence indicating that she was exercising ordinary care at the time she was injured by the merchandise hooks. The Court notes that Molero testified during her deposition that she is unaware of what she was doing before running into the merchandise hooks.[46]  The Court finds that Molero had a "duty to see that which should have been seen and is responsible to observe [her] course to see if [her] pathway is clear."[47]

---

[45] *Hutchinson*, 573 So. 2d at 1152.

[46] R. Doc. 13-2 at pp. 53-55.

[47] *Perrodin v. Lowe's Home Centers, Inc.*, Civ. A. No. 6:12-2255, 2013 WL 6667150, at *2 (W.D. La. Dec. 17, 2013) (quoting *Carr v. City of Covington*, 477 So.2d 1202, 1204 (La. App. 1st Cir. 1985)) (internal quotation marks omitted).

Finally, regarding the third and fourth prongs of the risk-utility balancing test – the cost of preventing the harm and the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature – the Court finds that these factors also weigh against finding the merchandise hooks at issue presented an unreasonable risk of harm. The Court finds that the cost of preventing the harm suffered by Molero would be enormous due to the prolific use of these types of hooks in department stores. Additionally, the cost of preventing the harm would be significant to the storeowner, since customers are continually removing merchandise from a hook, either to be replaced on that or a different hook, or to a cart, fitting room, or to the checkout stand to purchase. It would fly in the face of reason to assert that these hooks immediately become unreasonably dangerous when merchandise is removed from them. The Court further finds that Molero's activities as a shopper have a high social utility and are not inherently dangerous.

The Court therefore finds that Molero has failed to present sufficient support for an essential element of her premises liability claim, namely that the merchandise hook at issue presented an unreasonable risk of harm to prudent shoppers exercising reasonable care. Accordingly, Defendants are entitled to summary judgment as a matter of law because there is no genuine issue of material fact that the merchandise hooks did not create an unreasonable risk of harm.

IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment [48] is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 23, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[48] R. Doc. 13.